**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

LINDSAY ANDERSON, et al.,                          Case No. 1:20-cv-845

    Plaintiffs,                                              Dlott, J.
                                                                         Bowman, M.J.

        v.

FISCHER SINGLE FAMILY HOMES,
IV, LLC, et al.,

    Defendant.

**REPORT AND RECOMMENDATION**

This civil action is now before the Court on Defendant's motion to compel arbitration and dismiss this action in its entirety.  (Doc. 3). In the alternative, Defendant asks the court to stay the proceedings. Defendant also seeks attorney fees incurred for having to enforce the arbitration agreement.   Upon careful consideration and for the reasons stated below, Defendant's motion is well-taken.

### I. Background and Facts

Plaintiffs entered into an agreement for a new home to be built by Defendant on March 25, 2019. (See Doc. 1, Ex. A at 8–11, hereinafter, "the Agreement").  Included in the Agreement, signed by both parties, was a dispute resolution agreement with an arbitration clause.

The home took approximately 7 months to construct resulting in a closing taking place and possession being delivered to Plaintiffs on October 30, 2019. (Doc. 1, ¶¶ 9, 23).   After the closing, Plaintiffs reported several construction issues which Fischer addressed according to the terms of its Builder's Limited Warranty. (Id., ¶ 24-26). Not satisfied with the repairs and the quality of the construction of their home, Plaintiffs filed

the instant action alleging seven causes of action; First Claim: Negligent Misrepresentation "quality of construction" and "the home was free of defects" (Id., ¶ 47); Second Claim: Breach of Duty of Care to Construct in Workmanlike Manner "failed to construct the home in a workmanlike manner" (Id.,¶ 55); Third Claim: Breach of Contract and Breach of Warranty "warranted that the home would be free from any and all defects" (Id., ¶ 61); Fourth Claim: Violations of the Consumer Sales Practices Act "Defendant's actions set forth in the proceeding paragraphs" (Id., ¶69); Fifth Claim: Equitable Rescission "material breach of their contractual commitments" (Id., ¶73); Sixth Claim: Fraud in the Inducement "concealed material defects in workmanship" (Id., ¶ 75); Seventh Claim: Negligent and/or Intentional Infliction of Emotional Distress "result of the actions" (Id., ¶80).

Defendant now moves to dismiss Plaintiffs' complaint asserting that Plaintiffs' claims are subject to the parties' binding arbitration agreement. The undersigned agrees.

**II. Analysis**

*A. Standard of Review and Applicable Law*

Under the Federal Arbitration Act ("FAA"), a written agreement to arbitrate disputes which arise out of a contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000), citing 9 U.S.C. § 2. The FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and provide parties with a speedier and less costly alternative to litigation. *Id.* 9 U.S.C. Section 3 of the FAA provides that:

> [If] any suit or proceeding be brought in any of the courts of the United
> States upon any issue referable to arbitration under an agreement in writing

2

for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties, stay the trial of the action until such arbitration has been had in accordance with the terms of the Agreement, provided the applicant for the stay is not in default in proceeding with such arbitration.

Section 3 thus "requires" a court in which suit has been brought "'upon any issue referable to arbitration under an agreement in writing for such arbitration' to stay the court action pending arbitration once it is satisfied that the issue is arbitrable under the agreement." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967); *see also Santos v. Am. Broad Co.*,866 F.2d 892, 894 (6th Cir. 1989) ("[w]here the parties to a contract that provides for arbitration have an arbitrable dispute, it is crystal clear that Congress has mandated that federal courts defer to contractual arbitration.")

> *B. Defendant's motion is well-taken*

The pertinent terms the Agreement requiring arbitration of all the Plaintiffs' claims include the following, as set forth in Exhibit A to the Plaintiffs' Complaint:

> **20. Claims**: Builder and Purchaser agree that any claim, allegation, demand, dispute, controversy, action, or lawsuit based upon any injury, loss, liability, damage, obligation, cost or expense to any person or property arising out of or relating to this Agreement, the parties hereto or the Home, including but not limited to the Deposits, ("Claims") shall be resolved by the Builder's Limited Warranty. If the Builder's Limited Warranty is not able to resolve the Claim, the parties hereto agree that the Claim shall be resolved by the dispute resolution procedures set forth in this agreement.

> **31. Other Terms and Conditions:**

> **b. Limited Warranty:**

> **Limited Warranty**: Builder warrants the completed Home in accordance with the terms and conditions of Builder's Limited Warranty ("Limited Warranty") as set forth herein and in the Homeowner's Guide. Purchaser acknowledges receipt of the Limited Warranty and Homeowner's Guide.

…

**Limitation of Remedies**: Regardless of the type of Claim that Purchaser may bring against Builder or the legal theory upon which any such Claim is based, Purchaser understands and agrees that the exclusive remedy available to Purchaser is the remedy set forth in the Limited Warranty and Purchaser shall have no right to demand or recover any other remedy including, but not limited to, any remedy for personal injury or any type of consequential, incidental, or secondary loss or damages.

…

**c. Dispute Resolution Procedure; Right to Cure; Mediation; Arbitration: Dispute Resolution Procedure**: To Provide an efficient procedure for resolving any Purchaser Claim not able to be resolved under the Builder's Limited Warranty, Purchaser and Builder voluntarily elect and agree to the dispute resolution procedures set forth in this Paragraph, notwithstanding that other procedures, including those set forth in any "Right to Repair," "Right to Cure," or similar law, may be otherwise applicable.

…

**Arbitration:** If the mediation does not result in complete settlement of the Claim, then any unresolved Claim, regardless of the legal theory under which it is brought, shall be settled by binding arbitration administered by the Cincinnati, Ohio office of the American Arbitration Association pursuant to its Construction Industry Arbitration Rules and Mediation Procedures, except to the extent that specific arbitration procedures are set forth herein.

(Doc. 1, Ex. A).

Defendant contends that Plaintiff's claims fall within the scope of the arbitration agreement, and therefore, the Court should compel arbitration of Plaintiffs' claims and dismiss the instant complaint. Plaintiffs, however, argue that the Agreement is an unconscionable contract of adhesion, and therefore, the contract as a whole—including the arbitration agreement within—is unenforceable. (Doc. 6 at 7–9). Plaintiffs further argue they are entitled to equitable recission of the entire contract because defendant substantially breached the contract. (Doc. 1 at 17; Doc. 6 at 9).  Additionally, Plaintiffs

argue that Defendant used fraud and misrepresentation to induce them into closing on the home, (Doc. 1 at 14; Doc. 1 at 17–18), and that their claims of negligent misrepresentation and fraud in the inducement are not within the scope of the arbitration agreement. (Doc. 6 at 9–11). Plaintiff's contentions are not well-taken.

1. *The Arbitration Clause is not Unconscionable*

Under Ohio law, an arbitration clause is unconscionable, and therefore unenforceable, where there is both procedural unconscionability (lack of meaningful choice) and substantive unconscionability (arising from the terms of the contract). See *Collins v. Click Camera & Video, Inc.*, 621 N.E.2d 1294, 1299 (1993) (distinguishing between procedural and substantive unconscionability). An arbitration agreement is an unconscionable contract of adhesion where there are: 1) one-sided or unreasonably favorable contract terms; 2) there is unequal bargaining power which results in lack of meaningful choice to the less advantaged party; and 3) the less advantaged party lacks the ability to obtain the goods or services from another source and is thus forced to accept the terms of the contract. *Stout v. J.D. Byrider,* 228 F.3d 709, 716 (6th Cir. 2000).

Here, there are no facts pleaded which show the arbitration clause itself was unconscionable. Plaintiffs' claims of unconscionability relate to the contract as a whole and the closing after the Agreement and arbitration clause were signed. Looking to the clause itself, both parties were required to submit any claims arising from the Agreement to an arbitrator. While the defendant is an experienced actor in the home building industry, and uses a pre-printed contract form, this did not result in the plaintiffs being unfairly disadvantaged to the point of being denied meaningful choice in the Agreement. Plaintiffs presented no evidence which shows a situation was created where they could not

purchase a home, but for signing the arbitration agreement at issue. Defendant is one of many homebuilders in the marketplace and there is nothing pleaded in the complaint which shows plaintiffs were unfairly prevented from seeking out other service providers through the actions of the defendant or the defendant's use of the preprinted form contract. Further, the clause itself does not impose any financial barriers to the plaintiffs pursuing the resolution of their claims and it does not unfairly give the defendant power over the processes used to arbitrate or the selection process for arbitrators.

2.  *The Arbitration Clause is Enforceable*

Next, Plaintiffs' contention that the Arbitration clause is unenforceable based on Defendant's alleged breach of the underlying agreement lacks merit.  As noted by Defendant, in *Prima Paint Corp. v. Flood & Conklin Mfg. Co*, 388 U.S. 395 (1967), the Supreme Court held that a "claim of fraud in the inducement of the entire contract" is a matter to be resolved by the arbitrators, not the federal courts. *Id*. at 402-04.  Here, as in *Prima Paint*, the Plaintiffs' claim of substantial breach of the underlying contract would be for the arbitrators to decide once this court is satisfied that the validity of arbitration clause is not at issue. See also *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) ("in deciding whether a valid agreement to arbitrate exists, district courts may consider only claims concerning the validity of the arbitration clause itself, as opposed to challenges to the validity of the contract as a whole").

Additionally, Plaintiffs argue that defendant used fraud and misrepresentation to induce them into closing on the home and that their claims of negligent misrepresentation and fraud in the inducement are not within the scope of the arbitration agreement. This contention also lacks merit.

Here, Plaintiffs executed the Construction and Purchase Agreement on March 25, 2019. Doc. 1, ¶9.  However, as noted by Defendant, Plaintiffs did not allege in their Complaint or provide any evidence in response to Defendant's motion that they were fraudulently induced into agreeing to the arbitration clause contained in the Agreement. Notably, the record before the Court is devoid of any evidence to support even a claim that Plaintiffs were fraudulently induced to enter into the Agreement.  Instead, Plaintiffs rely on statements allegedly made to them during and after the construction of their home said statements occurring long after the parties had a valid and enforceable agreement. (Doc. 6, at p. 9). Under these facts, the arbitration clause is still "valid, irrevocable and enforceable." *Stout* at 228 F.3d at 714.

 As in *Prima Paint*, the Plaintiffs have failed to plead or present any evidence of fraud in the inducement of the Agreement to arbitrate claims. Following *Prima Paint,* the court *in Arnold v. Arnold Corp.-Printed Commc'ns for Bus*., 920 F.2d 1269, 1278 (6th Cir. 1990) affirmed the district court's order requiring arbitration stating the complaint must contain a "well-founded claim of fraud in the inducement of the arbitration clause itself, standing apart from the whole agreement, that would provide grounds for the revocation of the agreement to arbitrate." Id.

Furthermore, the arbitration clause contained in the Agreement is quite broad. Notably, the Agreement here defines a Claim as "any claim, allegation, demand, dispute, controversy, action or lawsuit based upon any injury, loss, liability, damage, obligation, cost or expense to any person or property *arising out of or relating to this Agreement, the parties hereto or the Home*…".  (*See* Doc. 1, Ex. A pg.5 ¶20).  As such,

Defendants contend that Plaintiffs' causes of action for fraud and misrepresentation fit squarely within the arbitration clause's definition.

With respect to the scope of the arbitration clause, both parties cite to *Fazio v. Lehman Bros., Inc.,* 340 F.3d 386 (6th Cir. 2003).   In *Fazio,* the court held that the arbitration clause included in an agreement with a financial broker was enforceable as it applied to claims of fraud and mismanagement of client money. 340 F.3d at 391–92. The arbitration agreement included language such as, "[a]ny controversy arising out of or relating to any of my accounts, to transactions with you for me, or to this or any other agreement or the construction, performance or breach thereof shall be settled by arbitration." *Id.* at 396. As such, the court reasoned the arbitration agreement language was "quite broad" and it covered the alleged acts of fraud and theft by the defendant in that case. *Id.*

Similarly, in *Acad. of Med. v. Aetna Health, Inc.*, 2006-Ohio-657, 842 N.E.2d 488, the Ohio Supreme Court affirmed the scope analysis in *Fazio*, where the arbitration clause "purport[ed] to cover any disputes about the parties' business relationship," and the court held it "must be considered broad." *Academy of Medicine*, 842 N.E. 2d at 493; *see also Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498 (6th Cir. 2007) (holding the arbitration clause in a Purchase and Sales Agreement (PSA) for water resources underneath the owners' land that "govern[ed] any controversy 'arising out of' the PSA was 'extremely broad'") (quoting language from *Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 160 (6th Cir. 1983)). Similarly, in *Cincinnati Gas*, language in the arbitration clause of a contract for fabrication and installation of materials for a coal and natural gas plant which read: "'[a]ny controversy or claim arising out of this

Agreement ... shall be determined by arbitration,'" was held to be "extremely broad." 706 F.2d at 160. Thus, arbitration clauses which include language that qualifies relationships, claims, or controversies arising out of an agreement with "any," are broad in the context of a federal policy favoring arbitration.

Here, the arbitration clause included in the Agreement is broad; much like the clauses in *Fazio*, *Academy of Medicine*, *Nestle*, and *Cincinnati Gas*. The language in the clause at issue here reads: "*any* claim, allegation, demand, dispute, controversy, action or lawsuit… to *any* person or property *arising* out of or relating to this Agreement, the parties hereto or the Home…" may be subject to arbitration. (Doc. 1, Ex. A at 5) (emphasis added). This language falls within what the 6th Circuit (in *Fazio*) and Ohio Supreme Court (in *Academy of Medicine*) considers to be a broad, but enforceable, arbitration clause.

As such, the undersigned finds that all of plaintiffs' claims fall within the scope of the broad arbitration clause because they necessarily refer to the Agreement between the parties. Claims one (negligent representation); two (Breach of Duty of Care to Construct in Workmanlike Manner); three (breach of Contract and Breach of Warranty); five (Equitable Recission); and six (fraud in the inducement), each make direct reference, either to the work performed under the Agreement, or directly concern enforcement of the contract itself. These fall within the broad language of the arbitration agreement which states: "any claims… arising out of or relating to this Agreement, the parties hereto or the Home." The fourth claim (Violations of the [Ohio] Consumer Sales Practices Act) and the seventh claim (Negligent and/or Intentional Infliction of Emotional Distress, also arise in reference to the purchase agreement and relationship between the parties. This is because these violations concern the defendant's alleged deceptive practices in the

performance of the Agreement and the intentional or negligent distress the defendant's alleged failures to perform under the Agreement caused. Therefore, because each of these claims refers to the Agreement or the relationship between the parties, they are properly within the scope of the arbitration clause.

The broad arbitration clause signed by both parties covers "any" disputes or claims arising out of the Agreement, between the parties, or arising out of the home. As discussed, all of Plaintiffs' claims fall within the scope of the likely valid arbitration clause. Because they fall within the scope of the arbitration clause, and because there are no federal statutory claims asserted which were intended by Congress not to be arbitrable, the undersigned finds that Plaintiffs claims should be dismissed at this time and this matter should proceed in arbitration.

*3. Attorney fees*

Defendant is also entitled to its attorney fees for plaintiffs' failure to abide by the arbitration clause. It is well-settled that "attorney fees are not ordinarily recoverable in the absence of a statue or enforceable contract providing therefore.*" Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 717 (1967). The Agreement before this Court contains an enforceable agreement entitling Defendant to recover its attorney fees for the exact situation presented here, i.e., Plaintiffs' wrongful attempt to avoid compliance with their agreement to arbitrate unresolve claims causing Defendant to incur attorney fees to enforce the arbitration agreement. Notably, the Agreement provides:

> "if Purchaser files any lawsuit against Builder or otherwise fails to strictly adhere to the dispute resolution procedure set forth in this Agreement, Builder shall be entitled to recover from Purchaser its out-of-pocket expenses, including attorney fees, incurred while enforcing the terms of this Agreement or otherwise defending such lawsuit."
> See Doc. 1 Ex. A pg. 6 ¶22.

"Federal courts generally observe the 'American rule' that 'litigants pay their own attorney[] fees.'" *Cook v. All State Home Mortg.*, 329 F. App'x 584, 588-89 (6th Cir. 2009) *quoting Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247, 256 (1975). However, Ohio does permit attorney fee awards in certain circumstances, including when contractual provisions permit it. *Id.* citing *Taylor Bldg. Corp. of Am. v. Benfield,* 117 Ohio St. 3d 352, 2008 Ohio 938, 884 N.E.2d 12, 27 (Ohio 2008) (citing *Nottingdale Homeowners' Ass'n, Inc. v. Darby,* 33 Ohio St. 3d 32, 514 N.E.2d 702 (Ohio 1987)); *see also Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 717 (1967) (noting that the American Rule can be overcome by an "enforceable contract" allocating attorney fees). *See also, Fruit Creations, LLC v. Edible Arrangements, LLC*, No. 3:20-cv-00479, 2021 U.S. Dist. LEXIS 149904, at *9 (M.D. Tenn. Aug. 10, 2021)(the court agrees with those courts, state and federal, that have found that they have jurisdiction to consider attorney's fee motions filed either in conjunction with motions to compel arbitration or after such motions have already been granted (citations deleted)).

Therefore, Defendant's request for attorney fees "incurred while enforcing the terms of [the] Agreement" should be granted.[1]

### III. Conclusion

For these reasons, it is herein **RECOMMENDED** that Defendant's motion to dismiss Plaintiffs' complaint, compel arbitration and recover attorney fees (Doc. 3) is well-

---

[1] If this portion of the Report and Recommendation is adopted by the District Judge, Defendant should then submit an affidavit setting forth the fee amount requested and any supporting documents relating to the amount of its attorney fees in relation to this case.

taken and herein **GRANTED.**   It is further **RECOMMENDED** that an order be entered compelling arbitration.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

LINDSAY ANDERSON, et al.,                    Case No. 1:20-cv-845

    Plaintiff,                               Dlott, J.
                                             Bowman, M.J.
        v.

FISCHER SINGLE FAMILY HOMES,
IV, LLC, et al.,

    Defendant.


## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).